UNITED STATES DISTRICT COURT
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ASHTON HERNANDEZ and ANDREW SMYRAK, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ZENLEN, INC. d/b/a NATIVE COS.,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT** |

Plaintiffs Ashton Hernandez and Andrew Smyrak, on behalf of themselves and all others similarly situated ("Plaintiffs"), by and through their undersigned counsel, Denlea & Carton LLP and Kravit Smith LLP, state for their Complaint against Zenlen, Inc. d/b/a Native Cos. ("Native" or "Defendant"), as follows:



1. This action seeks to redress the false, misleading, and deceptive advertising and packaging claims that Native has made in connection with the sale of its "whole body deodorant" that purports to be "clinically proven 72-hour odor protection for pits, privates and more."

2. Native's bold claim to have a clinical study proving that its whole body deodorant lasts for three days is false. Native has never clinically tested its whole body deodorant. Instead, Native has simply copied the "72-hour protection" claim by a number of different deodorants in the market, added the false "clinically proven" claim, and then charged over 100% more than its competitors based on that false claim.

3. As the National Advertising Division of BBB National Programs (the "NAD")[1] has repeatedly stated, however, representations that a product's efficacy has been "clinically proven" must closely match the underlying evidence because they are a promise that there is scientific evidence that establishes the truth of the claim. Such a claim conveys an especially strong message to consumers.

4. Given the size of the market for deodorants and antiperspirants in the United States and the hundreds of competing products, there is pneumatic pressure on those competitors to differentiate their products and convince consumers to expand their use to the whole body. Indeed, it is estimated that nearly 298 million Americans[2] regularly use deodorants and/or antiperspirants, making the sale of these products one of the most lucrative business enterprises

---

[1] The NAD is an independent system of self-regulation established by the advertising industry in 1971 and designed to build consumer trust in advertising. It reviews national advertising in all media in response to third-party challenges or through inquiries opened on its own initiative. The NAD's decisions set consistent standards for advertising truth and accuracy, delivering meaningful protection to consumers and leveling the playing field for business. An advertiser's failure to participate in the NAD's review of its advertising and/or failure to comply with the NAD's recommendations and decision results in the matter being referred to the appropriate regulatory agency, which is typically the Federal Trade Commission. NAD referrals receive priority treatment from the Federal Trade Commission.

[2] https://www.statista.com/statistics/285880/usage-of-deodorants-anti-perspirants-in-the-us-trend/

in the history of mankind[3], garnering revenues of over $29 billion in 2022 and an estimated $43 billion by 2030.[4]

5. Consumer products giant Unilever recognized the marketing prowess of Native and purchased it for $100 million in 2017. Native has since expanded its product lines and is one of the leading "natural" deodorants in the market. However, the immediate success of Native's whole body deodorant is built on the lie that it provides "clinically proven 72-hour odor protection."

6. By this action, Plaintiffs seek to redress Native's unfair and deceptive marketing campaign built upon the misleading claims that it makes, and to obtain the financial recompense to which Plaintiffs and their fellow class members are entitled.

## THE PARTIES

7. Plaintiff Ashton Hernandez is an individual who resides in Manhattan, New York.

8. Plaintiff Andrew Smyrak is an individual who resides in South Windsor, Connecticut.

9. Defendant Zenlen, Inc. d/b/a Native Cos. is a Delaware corporation with its principal place of business in San Francisco, California.

10. Defendant manufactures, markets, and sells Native whole body deodorant through its own nativecos.com website, Amazon, and numerous brick-and-mortal retail stores like Walmart, Target, CVS, and Walgreens (and their respective online shopping websites).

---

[3]. https://www.fastcompany.com/90705210/inside-the-22-billion-deodorant-industrys-effort-to-ditch-plastic
[4] https://www.linkedin.com/pulse/antiperspirants-deodorants-market-size-forecast-2023-2030-yelge-uavkf/

**JURISDICTION AND VENUE**

11. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because (1) the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, and (2) the named Plaintiffs and Defendant are citizens of different states. 28 U.S.C. § 1332(d)(2)(A).

12. The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as the parties are diverse and the amount in controversy exceeds the requisite threshold.

13. This Court may exercise jurisdiction over Native because Native has sufficient minimum contacts in New York and purposely avails itself of the markets within New York through the promotion, sale, marketing, and distribution of its products, thus rendering jurisdiction by this Court proper and necessary.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred within this judicial district and because Native has marketed and sold the products at issue in this action within this judicial district and has done business within this judicial district.

**FACTUAL BACKGROUND**

**I.   Due to the Premium Consumers are Willing to Pay for Products that are Backed by Science, Manufacturers Routinely Misrepresent That Their Products Have Been Scientifically Proven to be Effective**

15. Consumers who are seeking help to treat and minimize the symptoms of body odor are particularly vulnerable targets for unscrupulous manufacturers and advertisers. In a bid to avoid the negative side effects of antiperspirants and deodorants with artificial and/or harsh chemical compositions, consumers are willing to pay a premium for natural deodorant products that are scientifically proven to be effective. This is especially true where there are putative

4

claims that the product does not have negative side effects. In an overcrowded marketplace where beneficial health claims are ubiquitous, being able to convince the consuming public about the efficacy of a product is critical.

16. In order to differentiate their products and gain a competitive edge, manufacturers and advertisers routinely mislead consumers by claiming that the efficacy of their products is backed by science (*i.e.*, "establishment claims"), when, in fact, it is not. That is why Courts are particularly wary of claims by manufacturers that their product has been scientifically proven to be effective when, as here, those claims are false.

17. An advertiser's health-related claims about the efficacy of a product must "be supported with 'competent and reliable scientific evidence,'" which the Federal Trade Commission (the "FTC") defines as "'tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that have been conducted and evaluated in an objective manner by persons qualified to do so, using procedures generally accepted in the profession to yield accurate and reliable results.'"[5] As the FTC has stated, "well-controlled human clinical studies are the most reliable form of evidence."[6]

II. **Native Falsely Markets Its Deodorant Products as "Clinically Proven to Provide 72-hour Odor Protection"**

18. Native advertises it whole body deodorant on its website, television and social media.

19. Native describes its whole body deodorant on its website as follows:

> Sometimes stink exists beyond your underarms. Our whole body deodorant spray delivers clinically proven 72-hour odor protection for your pits, privates, and more. Made without aluminum, parabens, baking soda, and talc—this fast-drying

---

[5]. FTC, Dietary Supplements: An Advertising Guide to Industry, Section II(B), at https://www.ftc.gov/tips-advice/business-center/guidance/dietary-supplements-advertising-guide-industry
[6]. FTC, Dietary Supplements: An Advertising Guide to Industry, Section II(B)(2), at https://www.ftc.gov/tips-advice/business-center/guidance/dietary-supplements-advertising-guide-industry

spray is gentle on sensitive areas and applies light as air. Just a cooling, fresh mist that leaves you smelling great.

20. Its false claim that it "delivers clinically proven 72-hour odor protection" — it has not been clinically proven — is further undercut by its instructions for use:

> Hold can upright and spray from 6 inches away on your pits, privates, and more. Think underboobs, chest, thighs, and feet. This works just about anywhere you want to fight body odor. Spray on as much (or as little) as you want. Use it in the morning as part of your daily personal care routine, and repeat as needed throughout the day. For external use only.

In other words, Native makes the preposterous claim that it makes no difference how much of the spray a consumer uses and it should still provide 72-hour odor protection. However, the consumer may "repeat as needed throughout the day," which would no doubt be necessary considering that its ingredients have no lasting effect on odor. If the product truly had the advertised 72 hour efficacy, the marketing line would have been, "Unlike other deodorants, there is no need to repeat throughout the day, because protection from odor lasts for a full 72 hours".

21. Native whole body deodorant is made with the following ingredients: Denatured alcohol, fragrance, water, nitrogen, and dipropylene glycol. Denatured alcohol is ordinary ethanol alcohol with additives to make it impossible to drink. While ethanol has some antibacterial properties and is used in deodorants and other products such as hand sanitizers, it evaporates quickly and does not create a barrier to new bacterial growth which leads to odor production. Suffice it to say that there is no suggestion in any scientific literature that hand sanitizers or deodorants containing only denatured alcohol prevents bacterial formation for an entire day, much less three days. Water, of course, does not provide odor production, and nitrogen is simply the spray propellant. Dipropylene glycol is merely a common solvent for delivering fragrances. Finally, there is no support in any scientific literature that a fragrance alone can prevent the accumulation of bacteria that causes body odor. All fragrance can do is

help mask body odor by accompanying the natural body odor with a more pleasant scent, but it does not prevent body odor.

22. Native has misled and is misleading consumers with its false claim that its "natural" formulation of everyday ingredients has cracked the code on body odor and has clinical proof that it provides 72-hour odor protection. In reality, no ingredient, nor combination of ingredients in Native Deodorant can deliver the promised results.

### III. Plaintiffs Purchased Native's Deodorant

#### a. Plaintiff Hernandez

23. Hernandez purchased Native whole body deodorant spray in March 2024 at Target for approximately $14.

24. Prior to purchasing the Native whole body deodorant, Hernandez was exposed to Native's online marketing of its deodorant as clinically proven to provide 72-hour odor protection. Specifically, Hernandez saw Native's 72-hour claim, including the picture on page one of this Complaint, on Amazon.

25. Hernandez purchased the Native whole body deodorant reasonably believing that it was clinically proven to provide 72-hour odor protection.

26. It did not provide odor protection for more than one day at most.

27. Had Hernandez known that Native whole body deodorant was not clinically proven to provide 72-hour odor protection, she would not have purchased it. At the very least, Hernandez would not have paid the exorbitant price premium charged for Native whole body deodorant that purported to have been clinically proven to provide 72-hour odor protection.

28. Hernadez could have purchased an equivalent and less expensive "natural," denatured alcohol-based deodorant without the false "clinically proven to provide 72-hour odor

protection" hype. For example, instead of the Native's whole body deodorant that costs $3.99/oz., Hernandez could have, for example, purchased Nivea Fresh Natural deodorant for $1.69/oz., which is 136% less than Native's misleadingly marketed deodorant and Nivea's deodorant even has higher ratings than Native whole body deodorant on Amazon.



      b.      **Plaintiff Smyrak**

29. Smyrak purchased three Native whole body deodorant sprays in late Spring 2024 at Walmart for approximately $14 each.

30. Prior to purchasing the Native whole body deodorant, Smyrak was exposed to Native's marketing of its deodorant as clinically proven to prove 72-hour odor protection. Specifically, Smyrak saw that claim on Native's website prior to purchasing it at Walmart. In addition, Smyrak saw a display at Walmart with that claim.

31. Smyrak purchased the Native whole body deodorant reasonably believing that it was clinically proven to provide 72-hour odor protection.

32. It did not provide odor protection for more than one day at most and had to reapply the deodorant multiple times a day.

33. Had Smyrak known that Native whole body deodorant was not clinically proven to provide 72-hour odor protection, he would not have purchased it. At the very least, Smyrak would not have paid the price premium charged for Native whole body deodorant that purported to have been clinically proven to provide 72-hour odor protection.

34. Smyrak could have, for example, purchased the equivalent and less expensive "natural," denatured alcohol-based Nivea Fresh Natural deodorant described above.

## CLASS DEFINITION AND ALLEGATIONS

**New York Class**

35. Plaintiff Hernandez brings this action on behalf of herself and all other similarly situated consumers in the State of New York pursuant to Rule 23 of the Federal Rules of Civil Procedure, and seeks certification of the following subclass (the "New York Class"):

> All consumers who, within the applicable statute of limitations period, purchased in the State of New York (whether online or in-person) Native Whole Body Deodorant Spray Products – manufactured, marketed, distributed and/or sold by Defendant which Defendant warranted as being "clinically proven to provide 72-hour odor protection" (the "Class Products"). Excluded from the class are Defendant, its parents, subsidiaries, affiliates, officers and directors, judicial officers and their immediate family members and associated court staff assigned to this case, and those who purchased Class Products for resale.

36. Plaintiff Hernandez expressly disclaims any intent to seek any recovery in this action for personal injuries that he or any New York Class member may have suffered.

**Connecticut Class**

37. Plaintiff Smyrak brings this action on behalf of himself and all other similarly situated consumers in the State of Connecticut pursuant to Rule 23 of the Federal Rules of Civil Procedure, and seeks certification of the following subclass (the "Connecticut Class"):

> All consumers who, within the applicable statute of limitations period, purchased in the State of Connecticut (whether online or in-person) Native Whole Body Deodorant Spray Products – manufactured, marketed, distributed and/or sold by Defendant which Defendant warranted as being "clinically proven to provide 72-hour odor protection" (the "Class Products"). Excluded from the class are Defendant, its parents, subsidiaries, affiliates, officers and directors, judicial officers and their immediate family members and associated court staff assigned to this case, and those who purchased Class Products for resale.

38. Plaintiff Smyrak expressly disclaims any intent to seek any recovery in this action for personal injuries that he or any Connecticut Class member may have suffered.

39. **Numerosity**. This action is appropriately suited for a class action. The members of both the New York and Connecticut Classes are so numerous that joinder of all members of those classes is impracticable. Plaintiffs are informed, believe, and thereon allege, that the proposed New York and Connecticut Classes each contain thousands of purchasers of the Class Products who have been damaged by Native's conduct as alleged herein. The precise number of the members of the New York and Connecticut Classes is unknown to Plaintiffs but is believed to be in the thousands for both classes.

40. **Existence and Predominance of Common Questions of Law and Fact**. This action involves questions of law and fact common to the each of the New York and Connecticut. The common legal and factual questions for the New York Class include, but are not limited to, the following:

- Whether Defendant's conduct, as alleged herein, constitutes violations of New York General Business Law Section 349.

10

- Whether Defendant's conduct, as alleged herein, constitutes violations of New York General Business Law Section 350.

- Whether Defendant falsely marketed, and/or sold each Class Product as "clinically proven to provide 72-hour odor protection."

- Whether Defendant's marketing of each Class Product as "clinically proven to provide 72-hour odor protection" was and/or is false, fraudulent, deceptive, and/or misleading.

41. The common legal and factual questions for the Connecticut Class include, but are not limited to, the following:

- Whether Defendant's conduct, as alleged herein, constitutes violations of Connecticut's Unfair Trade Practices Act ("CUTPA"), C.G.S.§42-110b, et seq.'s unfair practices prohibitions.

- Whether Defendant's conduct, as alleged herein, constitutes violations of Connecticut's Unfair Trade Practices Act ("CUTPA"), C.G.S.§42-110b, et seq.'s deceptive practices prohibitions.

- Whether Defendant falsely marketed, and/or sold each Class Product as "clinically proven to provide 72-hour odor protection."

- Whether Defendant's marketing of each Class Product as "clinically proven to provide 72-hour odor protection" was and/or is false, fraudulent, deceptive, and/or misleading.

42. **Typicality**. Plaintiffs' respective claims are typical of the claims of the members of their respective classes, because, *inter alia*, all the class members have been injured through the uniform misconduct described above and were subject to Native's blatant misrepresentations of material information. Moreover, Plaintiffs' claims are typical of their respective class members' claims. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of their respective classes.

43. **Adequacy of Representation**. Plaintiffs will fairly and adequately protect the interests of the members of their respective classes. Plaintiffs purchased a Class Product, and they were harmed by Native's deceptive misrepresentations. Plaintiffs have therefore suffered

an injury in fact as a result of Native's conduct, as did all members of their respective classes who purchased Class Products. Plaintiffs have retained counsel who are adept, sophisticated, and experienced in the field of class action litigation, and have adequate resources to fully and zealously advocate on behalf of both the New York and Connecticut Classes.

44. **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Native. It would be virtually impossible for a member of the New York and Connecticut Classes, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the members of the New York and Connecticut Classes could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

45. Plaintiffs seek monetary damages, including statutory damages on behalf of their respective classes. Unless the New York and Connecticut Classes are certified, Native will be allowed to profit from its deceptive practices, while Plaintiffs and their respective class members will have suffered damages.

## COUNT I

### (Violation of New York General Business Law Section 349)

46.     Plaintiff Hernandez realleges and incorporates by reference the allegations in paragraphs 1 through 45 as if fully set forth herein.

47.     New York General Business Law § 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]."

48.     By falsely marketing, distributing and/or selling the Class Product to Plaintiff Hernandez and the other New York Class members as "clinically proven to provide 72-hour odor protection," Defendant engaged in, and continues to engage in, deceptive acts and practices because the Class Product has not been "clinically proven to provide 72-hour odor protection"

49.     In taking these actions, Defendant failed to disclose material information about its product, which omissions were misleading in a material respect to consumers and resulted in the purchase of the Class Product.

50.     Defendant has deceptively advertised, marketed, and sold the Class Product to consumers.

51.     Defendant's conduct was consumer oriented.

52.     Defendant engaged in deceptive acts and/or practices while conducting business, trade, and/or commerce and/or furnishing a service in New York.

53.     Defendant's false "clinically proven to provide 72-hour odor protection" claim was and is misleading in a material respect to the consumers Native targeted.

54.     Based on, among other things, Defendant's knowledge that the Class Product was not proven in a clinical setting, Defendant knew that by making the misrepresentations addressed

herein, Plaintiff and other consumers would be misled into purchasing the Class Product and/or paying a premium price for the Class Product.

55. Plaintiff Hernandez and the New York Class members have been aggrieved by and have suffered losses as a result of Defendant's violations of Section 349 of the New York General Business Law. By virtue of the foregoing unfair, unconscionable, and deceptive acts in the conduct of trade or commerce, Plaintiff Hernandez and the members of the New York Class have been substantially injured by purchasing and/or overpaying for the Class Product which is not what Defendant represents it to be.

56. By reason of the foregoing, Defendant's conduct, as alleged herein, constitutes deceptive acts and practices in violation of Section 349 of the New York General Business Law, and Defendant is liable to Plaintiff Hernandez and the New York Class for the actual damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus statutory damages, treble damages, and attorneys' fees and costs.

57. Defendant's conduct, as alleged herein, in violation of Section 349 of the New York General Business Law was engaged in by Defendant willfully and/or knowingly. Accordingly, Plaintiff Hernandez and members of the New York Class are entitled to an award of damages above and beyond their actual damages in accordance with Section 349(h) of the New York General Business Law.

**COUNT II**

**(Violation of New York General Business Law Section 350)**

58. Plaintiff Hernandez realleges and incorporates by reference the allegations in paragraphs 1 through 57 as if fully set forth herein.

59. Defendant's labeling, marketing, and advertising of the Class Product is "misleading in a material respect," as it falsely claims that the Class Product is "clinically proven to provide 72-hour odor protection" and thus is "false advertising."

60. No rational individual would purchase the Class Product at the premium price at which it is sold if that individual knew that the Class Product was not "clinically proven to provide 72-hour odor protection," which is how Defendant markets the Class Product.

61. Defendant's advertisements and marketing of the Class Product as "clinically proven to provide 72-hour odor protection" were consumer oriented.

62. Defendant's advertisements and marketing of the Class Product as "clinically proven to provide 72-hour odor protection" were misleading in a material respect.

63. By virtue of the foregoing unfair, unconscionable, and deceptive acts in the conduct of trade or commerce in New York, Plaintiff Hernandez and the members of the New York Class have been substantially injured by overpaying for a product that has diminished value due on account of the false claim that it has been tested clinically and proven to provide 72-hour odor protection.

64. Defendant's conduct, as alleged herein, constitutes false advertising in violation of Section 350 of the New York General Business Law, and Defendant is liable to Plaintiff Hernandez and the members of the New York Class for the actual damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, statutory damages, plus treble damages, and attorneys' fees and costs.

## COUNT III

**(Violations of Connecticut's Unfair Trade Practices Act ("CUTPA"), C.G.S.§42-110b, *et seq.*- Unfair Practices)**

65. Plaintiff Smyrak hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 64 as though set forth fully herein.

66. Section 42-110b(a) of the Connecticut General Statutes provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

67. Defendant's conduct, as alleged herein, constitutes an unfair business practice because, among other things, Defendants have falsely represented that the Class Products are "clinically proven to provide 72-hour odor protection," when they are not. This false representation is prominently featured in Defendant's marketing of the Class Products.

68. Said practices committed by Defendant are immoral, unethical, oppressive, and/or unscrupulous.

69. The foregoing acts and practices of Defendants constitute an unfair business practice under CUTPA, C.G.S. §42-110b(a).

70. Defendants' conduct as alleged in this cause of action is an intentional and wanton violation of Plaintiff Smyrak's rights and the rights of the members of the Connecticut Class, or has been done with a reckless indifference to those rights.

71. Pursuant to C.G.S. Section 42-110g, Plaintiff Smyrak and the Connecticut Class members have suffered an ascertainable loss of money or property as a result of Defendant's unfair business practice, as alleged herein. By virtue of the foregoing unfair acts in the conduct of trade or commerce, Plaintiff Smyrak and the members of the Connecticut Class have been substantially injured.

## COUNT IV

**(Violations of Connecticut's Unfair Trade Practices Act ("CUTPA")
C.G.S.§42-110b, *et seq.* - Deceptive Practices)**

72. Plaintiff Smyrak hereby realleges, and incorporates by reference the allegations contained in Paragraphs 1 through 71 as though set forth fully herein.

73. Defendant's acts, practices and false claims that the Class Products are "clinically proven to provide 72-hour odor protection" constitute deceptive acts and practices in the conduct of a trade or commerce in violation of the Connecticut Unfair Trade Practices Act, C.G.S. §42-110b(a), *et seq.*

74. Defendant's conduct as alleged in this cause of action is an intentional and wanton violation of Plaintiff Smyrak's rights and the rights of the members of the Connecticut Class, or has been done with a reckless indifference to those rights.

75. Pursuant to C.G.S. Section 42-110g, Plaintiff Smyrak and the Connecticut Class members have suffered an ascertainable loss of money or property as a result of Defendant's deceptive acts or practices, as alleged herein. By virtue of the foregoing acts in the conduct of trade or commerce, Plaintiff Smyrak and the members of the Connecticut Class have been substantially injured.

76. By reason of the foregoing, Defendant has violated CUTPA and are liable to Plaintiff Smyrak and the Connecticut Class for the damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus punitive damages, and attorneys' fees and costs.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against Defendant as follows:

A.    Certifying this action as a class action as soon as practicable, with the New York Class as defined above, designating Plaintiff Ashton Hernandez as the named New York Class representative, and designating the undersigned as Class Counsel.

B.    On Plaintiff Ashton Hernandez's Count I, awarding against Defendant the damages that Plaintiff Ashton Hernandez and the other members of the New York Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus statutory damages and treble damages.

C.    On Plaintiff Ashton Hernandez's Count II, awarding against Defendant the damages that Plaintiff Ashton Hernandez and the other members of the New York Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus statutory and treble damages.

D.    Certifying this action as a class action as soon as practicable, with the Connecticut Class as defined above, designating Plaintiff Smyrak as the named Connecticut Class representative, and designating the undersigned as Class Counsel.

E.    On Plaintiff Andrew Smyrak's Count III, awarding against Defendant the damages that Plaintiff Andrew Smyrak and the other members of the Connecticut Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus statutory damages and treble damages.

F.    On Plaintiff Andrew Smyrak's Count IV, awarding against Defendant the damages that Plaintiff Andrew Smyrak and the other members of the Connecticut Class have

suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus statutory and treble damages.

G. On Plaintiffs' Counts I through IV, awarding Plaintiffs and their respective classes interest, costs, and attorneys' fees.

H. Awarding Plaintiffs and the New York and Connecticut Classes such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:      June 26, 2024
            White Plains, New York

**DENLEA & CARTON LLP**
James R. Denlea
Jeffrey I. Carton
2 Westchester Park Drive, Suite 410
White Plains, New York 10604
Tel.: (914) 331-0100
Fax: (914) 331-0105
jdenlea@denleacarton.com
jcarton@denleacarton.com

            -and-

**KRAVIT SMITH LLP**

By: /s/ *Philip M. Smith*
        Philip M. Smith
75 South Broadway, Suite 400
White Plains, New York 10601
Tel.: (646) 493-8004
Fax: (917) 858-7101
psmith@kravitsmithllp.com

*Attorneys for Plaintiffs*