UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ASHTON HERNANDEZ, on behalf
of herself and all others similarly
situated,

                Plaintiff,

      v.

ZENLEN, INC. d/b/a NATIVE COS.,

              Defendant.

Case No. 1:24-cv-04846-DLC

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 2

PROCEDURAL STANDARD ........................................................................................ 4

ARGUMENT ................................................................................................................. 4

I.      All Claims Should Be Dismissed Because Plaintiff Fails to Adequately Allege
        That Zenlen Made a Deceptive Statement. ........................................................ 4

        A.      Plaintiff's Allegation That the Deodorant Was Not Clinically Tested Is
                Belied by the Document Plaintiff References. ........................................ 5

        B.      Even Ignoring the Report, Plaintiff's Unsupported Allegation That the
                Deodorant Was Not Clinically Tested Still Fails to State a Claim. ........ 7

        C.      Plaintiff Still Fails to Plausibly Allege That the Deodorant Does Not
                Provide "72-Hour Odor Protection." ..................................................... 11

II.     Plaintiff's Claims Should Be Dismissed Because She Fails to Plausibly Plead a
        Cognizable Injury. ............................................................................................ 12

CONCLUSION ........................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................................... *passim*

*Ault v. J.M. Smucker Co.*,
    310 F.R.D 59 (S.D.N.Y. 2015) .............................................................................10

*Belcastro v. Burberry Ltd.*,
    2017 WL 5991782 (S.D.N.Y. Dec. 1, 2017) ........................................................12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...........................................................................................4, 7

*Brady v. Basic Rsch., L.L.C.*,
    101 F. Supp. 3d 217 (E.D.N.Y. 2015) ...................................................................4

*DaCorta v. AM Retail Grp., Inc.*,
    2018 WL 557909 (S.D.N.Y. Jan. 23, 2018) .........................................................12

*Dashnau v. Unilever Mfg. (US), Inc.*,
    529 F. Supp. 3d 235 (S.D.N.Y. 2021) ...................................................................9

*DiFolco v. MSNBC Cable L.L.C.*,
    622 F.3d 104 (2d Cir. 2010) ..................................................................................3

*Dunham v. Covidien, LP*,
    498 F. Supp. 3d 549 (S.D.N.Y. 2020) .............................................................10, 11

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013) ..................................................................................5

*In re GNC Corp.*,
    789 F.3d 505 (4th Cir. 2015) ...........................................................................11, 12

*Greer v. Strange Honey Farm, LLC*,
    114 F.4th 605 (6th Cir. 2024) ...............................................................................8

*Guo Hua Ke v. Morton*,
    2012 WL 4715211 (S.D.N.Y. Sept. 30, 2012) ......................................................6

*Hawkins v. Coca-Cola Co.*,
    654 F. Supp. 3d 290 (S.D.N.Y. 2023) .................................................................10

*Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*,
    148 F. Supp. 3d 285 (S.D.N.Y. 2015) ...............................................................6, 7

*Housey v. Procter & Gamble Co.*,
    2022 WL 874731 (S.D.N.Y. Mar. 24, 2022), *aff'd*, 2022 WL 17844403 (2d
    Cir. Dec. 22, 2022) ................................................................................................... 13, 14

*Izquierdo v. Mondelez Int'l, Inc.*,
    2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ................................................................ 12, 13

*Jeanty v. UPS United Parcel Serv. Freight*,
    2021 WL 5054439 (S.D.N.Y. Nov. 1, 2021) ........................................................................ 10

*Martin v. Meredith Corp.*,
    657 F. Supp. 3d 277 (S.D.N.Y. 2023) (Cote, J.) .................................................................. 5

*Myers v. Wakefern Food Corp.*,
    2022 WL 603000 (S.D.N.Y. Mar. 1, 2022) .......................................................................... 8

*Noriega v. Abbott Lab'ys*,
    2024 WL 402925 (S.D.N.Y. Feb. 2, 2024) ........................................................................... 6

*Rider v. Uphold HQ Inc.*,
    657 F. Supp. 3d 491 (S.D.N.Y. 2023) (Cote, J.) .................................................................. 4

*Santiful v. Wegmans Food Markets, Inc.*,
    2022 WL 268955 (S.D.N.Y. Jan. 28, 2022) ........................................................................ 7

*Small v. Lorillard Tobacco Co.*,
    94 N.Y.2d 43 (1999) ........................................................................................................... 14

*Smith v. Apple, Inc.*,
    583 F. Supp. 3d 554 (S.D.N.Y. 2022) (Cote, J.) ................................................................ 14

*Spavone v. Fischer*,
    2012 WL 360289 (S.D.N.Y. Feb. 3, 2012) ........................................................................... 6

*Stutman v. Chemical Bank*,
    95 N.Y.2d 24 (2000) ........................................................................................................... 12

*Tomasino v. Estee Lauder Cos.*,
    44 F. Supp. 3d 251 (E.D.N.Y. 2014) ................................................................................... 12

*Valencia v. Snapple Beverage Corp.*,
    2024 WL 1158476 (S.D.N.Y. Mar. 18, 2024) ..................................................................... 10

*Williams v. Reckitt Benckiser LLC*,
    2021 WL 8129371 (S.D. Fla. Dec. 15, 2021) ....................................................................... 9

*Wurtzburger v. Kentucky Fried Chicken*,
    2017 WL 6416296 (S.D.N.Y. Dec. 13, 2017) ..................................................................... 12

**Statutes and Other Authorities**

Fed. R. Civ. P. 12(b)(6)............................................................................................................4

N.Y. Gen. Bus. Law § 349.......................................................................................................4

N.Y. Gen. Bus. Law § 350.......................................................................................................4

## INTRODUCTION

This putative class-action accuses Zenlen of falsely marketing its whole body deodorant spray as providing "clinically proven 72-hour odor protection for pits, privates & more." Unlike many false advertising cases, the challenged claim does not appear on the product package itself. Rather, the challenged claim appears only in certain advertisements online. Not every member of the putative class was exposed to the challenged statements. But Plaintiff alleges she was, and she filed this lawsuit because she speculates that Zenlen "has never clinically tested its whole body deodorant." ECF No. 4 ("Compl.") ¶ 2.

But Zenlen *has* clinically tested the deodorant. Before Plaintiff amended her Complaint, Zenlen shared with her counsel the clinical testing report reflecting that fact. Plaintiff incorporates the report shared with her into her amended pleading, *see* ECF No. 31 ("Am. Compl.") ¶ 24, but fails to acknowledge that it refutes her core allegation that Zenlen "has never clinically tested" the deodorant, *id.* ¶ 2. The report identifies the date, site, protocol, and findings of Zenlen's clinical test, *see generally* Ex. A,[1] and explains that study participants using the deodorant saw "significant reductions in odor" at "72 hours post-treatment," *id.* at 1, 8. Plaintiff attempts to characterize the report as something other than what it plainly is, even suggesting that it is "incomprehensible" in spite of the clear statements showing that a lab tested the deodorant for odor protection and reached the foregoing conclusion. But Plaintiff's criticisms of the report are beside the point: Plaintiff's claim is not that the testing report is inadequate or incomprehensible, but that no clinical testing was ever done. The very report that Plaintiff incorporates into her Amended Complaint, and which therefore can be considered by this Court

---

[1] All citations to "Ex." refer to the exhibit attached to the Declaration of Andrew Leff, submitted concurrently herewith.

at the outset of this case, shows that Plaintiff's theory is incorrect, and that report is fatal to her case.

The Amended Complaint suffers from further defects as well.  As a threshold matter, Plaintiff's allegations are the sorts of "naked assertion[s] devoid of further factual enhancement" that fail to state a claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiff alleges no facts to plausibly support her claim that the deodorant is not "clinically proven" or that the deodorant does not provide "72-hour odor protection."  Because Plaintiff offers only conclusory allegations that a reasonable consumer would be misled by the "clinically proven to provide 72-hour odor protection" statement, her Amended Complaint should be dismissed.  Plaintiff has also failed to plausibly allege payment of a premium price for the at-issue product, as required to state a GBL claim.

For these reasons, this Court should dismiss the Amended Complaint.

## BACKGROUND

Zenlen manufactures, markets, and sells a whole body deodorant spray under the brand name Native.  Am. Compl. ¶ 9.  Some advertisements for the deodorant state that it is "clinically proven [to provide] 72-hour odor protection for pits, privates and more."  *Id.* ¶ 1; *accord id.* ¶ 18.  That statement does not appear anywhere on the deodorant package itself.  *See id.* at 1 (image of product package).

Plaintiff is a consumer who allegedly bought the deodorant in March 2024.  Am. Compl. ¶ 26.  She allegedly bought the deodorant at a Target store after seeing the "clinically proven to provide 72-hour odor protection" claim in "online marketing" for the deodorant.  *Id.* ¶¶ 26–27.

Plaintiff filed this lawsuit based on her contention that the "clinically proven [to provide] 72-hour odor protection" claim is false.  *See* Compl ¶¶ 1–2.  The heart of Plaintiff's claim is her assertion that "Native has never clinically tested its whole body deodorant," and so its "bold

claim to have a clinical study proving that its whole body deodorant lasts for three days is false." *Id.* ¶ 2. Her original complaint provided no evidence to support this claim, nor could it (as it is untrue), yet Plaintiff baldly accused Zenlen of "simply cop[ying]" a similar claim made by other companies. *Id.*

Shortly after this suit was filed, in an effort to allay Plaintiff's stated concerns and avoid needless litigation, Zenlen voluntarily provided Plaintiff with a redacted copy[2] of the clinical testing report documenting the tests Zenlen ran to substantiate its "72-hour odor protection" claim. Am. Compl. ¶ 24; *see also* Ex. A.[3]  The report shows that the deodorant, tested on three different bodily zones, provided "significant reductions in odor" in each zone. Ex. A at 1, 8. Plaintiff nevertheless persisted on with her claim.

Zenlen moved to dismiss Plaintiff's original complaint, ECF No. 23, and the Court granted her "one opportunity to amend" it. ECF No. 28.  Plaintiff's amendment kept her original pleading largely intact,[4] proffering just a few new allegations: (1) an FAQ snippet from Zenlen's webpage for the deodorant, Am. Compl. ¶ 20; (2) allegations of Plaintiff's pre-suit attempt to ascertain whether the "72-hour odor protection" claim is, in fact, "clinically proven," *id.* ¶ 23;

---

[2] As explained to Plaintiff's counsel by email, the redacted content in the report relates to other products that are not at issue in this case.

[3] Because this clinical report is incorporated by reference into Plaintiff's Amended Complaint, *see* Am. Compl. ¶ 24 (describing clinical report and alleging that it "supports, rather than negates, Plaintiff's claim"), the Court may consider it in support of Zenlen's motion to dismiss that pleading. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 112 (2d Cir. 2010) ("Because DiFolco referred in her complaint to [the subject emails], the District Court could deem them incorporated in the complaint and therefore subject to consideration in its review of the adequacy of the complaint" upon defendants' motion to dismiss.).

[4] In her original complaint, Plaintiff was joined by another individual, Andrew Smyrak, who brought Connecticut state law claims and purported to represent a class of Connecticut purchasers of the deodorant. *See* Compl. ¶¶ 8, 29, 37, 65–76.  Mr. Smyrak has now apparently dropped his claims:  he did not join the Amended Complaint, which brings no Connecticut claims and proffers no allegations regarding a putative Connecticut class. *See generally* Am. Compl.

and (3) allegations mischaracterizing Zenlen's clinical testing report, *id.* ¶ 24.  Crucially, although Plaintiff at times attacks the *quality* of the report, *see id.*, her claim is both broader and simpler: "Native has never clinically tested its whole body deodorant," *id.* ¶ 2.  Plaintiff's own Amended Complaint proves that claim to be false.

Based on these allegations, Plaintiff asserts claims for violations of Sections 349 and 350 of New York's General Business Law ("GBL"), N.Y. Gen. Bus. Law §§ 349, 350.  Am. Compl. ¶¶ 41–59.  She purports to bring these claims on behalf of a putative class consisting of all New York purchasers of the deodorant.  *Id.* ¶ 33.

## PROCEDURAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Rider v. Uphold HQ Inc.*, 657 F. Supp. 3d 491, 497 (S.D.N.Y. 2023) (Cote, J.).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (cleaned up).  "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (cleaned up).  "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  This standard is intended to expose pleading deficiencies "at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558 (cleaned up).

## ARGUMENT

**I.    All Claims Should Be Dismissed Because Plaintiff Fails to Adequately Allege That Zenlen Made a Deceptive Statement.**

Plaintiff's claims require her to allege facts demonstrating that the challenged advertising "is deceptive and materially misleading to a reasonable consumer." *Brady v. Basic Rsch., L.L.C.*, 101 F. Supp. 3d 217, 236 (E.D.N.Y. 2015) (analyzing GBL claims).  It is "well settled that" a

court can resolve this question "as a matter of law" at the motion to dismiss stage. *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (affirming dismissal of GBL claims); *see also Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 287 (S.D.N.Y. 2023) (Cote, J.) (dismissing GBL claim for failing to plead facts plausibly establishing that an allegedly deceptive act was materially misleading).

Even with the benefit of amendment, Plaintiff fails to meet this threshold requirement. *First*, Plaintiff's allegation that Zenlen did not clinically test the deodorant is *contradicted* by the clinical study that she incorporates by reference into her complaint. *Second*, Plaintiff's naked allegation that Zenlen did not clinically test the deodorant and that the representation would therefore mislead a reasonable consumer is wholly conclusory and unsupported by any factual detail. It is therefore insufficient to state a claim. *Third*, she fails to plausibly plead that the deodorant does not in fact provide "72-hour odor protection," and so does not meet her burden of alleging that there is anything misleading about the deodorant's marketing.

### A. Plaintiff's Allegation That the Deodorant Was Not Clinically Tested Is Belied by the Document Plaintiff References.

Plaintiff's allegation that Zenlen "has never clinically tested its whole body deodorant," Am. Compl. ¶ 2, is refuted by the clinical testing report that Plaintiff incorporated by reference into her Amended Complaint. The clinical testing report, which Plaintiff acknowledges was previously shared with her counsel, *id.* ¶ 24, lists the date, site, protocol, and findings of the clinical test that Zenlen ran on the deodorant. *See generally* Ex. A.[5] As set forth in the report, in 2023, Zenlen tested the "Whole Body Deodorant Spray" on male and female subjects "to

---

[5] Though the testing report does not identify the deodorant by name, Zenlen's counsel represented to Plaintiff's counsel before moving to dismiss the original complaint that the deodorant is the "Whole Body Deodorant Spray" evaluated and discussed in the testing report. *See* Ex. A at 1.

evaluate" whether it "support[s] whole body odor reduction." *Id.* at 1.  The clinical study used a randomized, double blind design that tested the deodorant compared to either a control or baseline order, and was conducted in accordance to ICH/Good Clinical Practices (GCP).  *Id*. at 9.  The study evaluated the deodorant's odor prevention at various points in time, including 72 hours after treatment.  *Id.* at 1.

Plaintiff's allegation that Zenlen "has never clinically tested its whole body deodorant" (Am. Compl. ¶ 2; *see also* Compl. ¶ 2) is therefore contradicted by the clinical testing report, *see* Ex. A.  The same is true of Plaintiff's new allegation that Zenlen "ha[s] no clinical support for its 72-hour odor protection claim."  Am. Compl. ¶ 24.  The report plainly states that the testing showed "significant reductions in odor" at "72-hours post-treatment."  Ex. A at 1.  The Court therefore need not accept either allegation as true.  *See Guo Hua Ke v. Morton*, 2012 WL 4715211, at *3 (S.D.N.Y. Sept. 30, 2012) ("Where a complaint's allegations contradict the terms of documents incorporated by reference, the documents control and this Court need not accept as true the allegations in [a] complaint." (cleaned up)); *Spavone v. Fischer*, 2012 WL 360289, at *2 (S.D.N.Y. Feb. 3, 2012) ("Allegations in a complaint that are contradicted by documents incorporated therein need not be accepted as true by the court.").

Plaintiff alleges that the study is "flawed" and "incomprehensible."  Am. Compl. ¶ 24.  Without specifics, this is nothing more than the sort of "naked assertion devoid of further factual enhancement" that does not suffice to state a claim.  *Iqbal*, 556 U.S. at 678 (cleaned up).  It also stands in stark contrast to the cases Plaintiff cited in defense of her original Complaint, which involved specific challenges to clinical test results.  *See* ECF No. 25 at 13 (citing *Noriega v. Abbott Lab'ys*, 2024 WL 402925, at *3 (S.D.N.Y. Feb. 2, 2024) (plaintiffs identified a specific mismatch between the clinical studies and the challenged product's claims), and *Hidalgo v.*

*Johnson & Johnson Consumer Cos., Inc.*, 148 F. Supp. 3d 285, 297–98 (S.D.N.Y. 2015) (plaintiffs alleged that "clinically proven" claims could not be supported as to individual products when the underlying studies tested a combined three-step routine)); ECF No. 27 at 6–7 (discussing same).  Although the report is partly redacted to remove references to other products that are not at issue in this case, those redactions do not make the report "flawed" or "incomprehensible."

In any event, the report's "Key Findings" plainly belie Plaintiff's characterization, stating clearly that "[t]here were ***significant reductions in odor*** for treatment" compared to no treatment or baseline at "***72 hours post-treatment,***" Ex. A at 1, 8 (emphasis added).  Incredibly, Plaintiff nonetheless makes the demonstrably false claim that Zenlen "has never clinically tested its whole body deodorant."  Am. Compl. ¶ 2.  To the contrary, the report demonstrates that she lacks "[f]actual allegations [that would] raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678–79 (Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

### B.    Even Ignoring the Report, Plaintiff's Unsupported Allegation That the Deodorant Was Not Clinically Tested Still Fails to State a Claim.

Even putting aside the report, Plaintiff's attempt to challenge Zenlen's "clinically proven" representation, *see* Am. Compl. ¶ 2, fails to state a claim for several reasons.

*First*, Plaintiff's allegation that Zenlen "has never clinically tested its whole body deodorant," Am. Compl. ¶ 2, is too conclusory to support a claim.  A bald assertion, unsupported by factual allegations making that assertion plausible, need not be credited by the Court.  For example, in *Santiful v. Wegmans Food Markets, Inc.*, the plaintiffs alleged that their own lab tests showed that the product's labeling contained artificial, non-vanilla ingredients, contrary to the product label.  2022 WL 268955, at *1, *4 (S.D.N.Y. Jan. 28, 2022).  The court declined to

credit this bald, unsubstantiated assertion as fact at the pleading stage because it was wholly lacking "as to the testing methodology, the date, time, or place of the testing, who conducted the testing, and what the exact product tested was," among other deficiencies. *Id.* at *4.[6]

Plaintiff here offers even less than the plaintiffs in *Santiful*. She offers only the bald speculation that no testing took place, without any factual support whatsoever. She does not reference any third-party articles, reports, or materials suggesting as much. Nor does she reference any testing of her own, as in *Santiful*. This court is not required to accept such conclusory and baseless speculation as true. *See Myers v. Wakefern Food Corp.*, 2022 WL 603000, at *4 (S.D.N.Y. Mar. 1, 2022) (refusing to credit allegation that product contained artificial flavors where plaintiff relied on unsubstantiated lab testing); *see also Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 614–16 (6th Cir. 2024) (refusing to credit allegation that testing on product samples showed labeling claims were false because plaintiffs did not "explain how these samples were tested, who conducted the testing, how many samples were tested, when or where the samples were purchased ... or other details that would adequately show why the statement on [the product's] labels were false").

*Second*, even with the benefit of amendment, Plaintiff still fails to allege, as she must, what a reasonable consumer would understand the phrase "clinically proven" to mean. *Cf.* ECF No. 24 at 7; ECF No. 27 at 4. Her amended pleading cites the same language from the Better Business Bureau's National Advertising Division ("NAD") regarding evidence an advertiser should provide in a dispute between businesses before the NAD to support a claim that a product is "clinically proven." Am. Compl. ¶ 3; *see also* Compl. ¶ 3. But the Amended Complaint "does

---

[6] By contrast, as discussed above, the report provided to Plaintiff lists the date, site, protocol, and findings of the clinical test that Zenlen ran on the deodorant. *See generally* Ex. A.

not allege that reasonable consumers are aware of" these NAD pronouncements, "much less that they incorporate the[m] into their day-to-day marketplace expectations." *Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 242–43 (S.D.N.Y. 2021) (dismissing GBL claims because "Plaintiffs' citation to various federal regulations does not establish that a reasonable consumer is likely to be misled"); *see also Williams v. Reckitt Benckiser LLC*, 2021 WL 8129371, at *32 (S.D. Fla. Dec. 15, 2021) ("NAD proceedings are voluntary and its outcomes advisory: NAD decisions are thus non-binding on courts."). Absent allegations as to how a reasonable consumer would understand the deodorant's "clinically proven" statement, Plaintiff has not alleged that a reasonable consumer would be misled by Zenlen's online advertisement.

*Finally*, Plaintiff alleges that Zenlen has "withdrawn" its "clinically proven" claim, and that "[t]here can be no better evidence that Native had (and has) no basis for" its clinically proven claim. Am. Compl. ¶ 25. This assertion is *also* false. The claim still appears on Zenlen's website:



Native, https://www.nativecos.com/collections/shop-whole-body-deodorant#whole-body-deodorant-spray (last visited Jan. 31, 2025 ("Control stink on your chest, privates, inner thighs, feet, and more with clinically proven 72-hour whole body odor protection.").[7]  And, as Plaintiff acknowledges, the claim still appears on third-party sites such as Amazon, *see, e.g.*, Am. Compl. ¶ 25 n.8.  Plaintiff therefore alleges *no* true, factual support for her contention that Zenlen did not clinically test the deodorant.  In any event, even if Zenlen removed some references to its "clinically proven" claim from its website, that removal simply reflects a change in marketing strategy and does not suggest in any way that the claim was misleading in the first instance.  *Cf. Ault v. J.M. Smucker Co.*, 310 F.R.D 59, 68 (S.D.N.Y. 2015) (dismissing injunctive claims under GBL as moot where defendant removed challenged claim from product label).

In short, the Amended Complaint lacks anything suggesting that Zenlen's "clinically proven" claim is false, and the report that Plaintiff incorporates by reference into that Complaint refutes Plaintiff's theory.[8]  Consequently, Plaintiff's claims should be dismissed.  *See Hawkins v. Coca-Cola Co.*, 654 F. Supp. 3d 290, 305–06 (S.D.N.Y. 2023) (dismissing complaint that offered only "conclusory statements" and an "amorphous 'laboratory analysis'" to support allegation that a product contained certain ingredients because they were "a far cry from raising 'any factually substantiated allegations'" to support the GBL claims); *Dunham v. Covidien, LP*,

_____

[7] "Generally, courts may take judicial notice of publicly available information, including from a website."  *Jeanty v. UPS United Parcel Serv. Freight*, 2021 WL 5054439, at *1 n.1 (S.D.N.Y. Nov. 1, 2021) (taking judicial notice of website of defendant's employer).

[8] Plaintiff's generalized allegation, not tied to Zenlen or the deodorant, that "manufacturers and advertisers routinely mislead consumers by claiming that the efficacy of their products is backed by science (*i.e.*, 'establishment claims'), when, in fact, it is not" (Am. Compl. ¶ 15) does not suffice.  *See Valencia v. Snapple Beverage Corp.*, 2024 WL 1158476, at *5 (S.D.N.Y. Mar. 18, 2024) ("Plaintiff's generalized statement about [the production of citric acid] is not enough to adequately allege the citric acid used in the Product[s] is industrially produced." (quotation marks omitted)).

498 F. Supp. 3d 549, 563–64 (S.D.N.Y. 2020) (dismissing complaint that "fail[ed] to provide any factual basis to conclude that th[e challenged] statements were false, misleading, or contained any material omissions").

### C. Plaintiff Still Fails to Plausibly Allege That the Deodorant Does Not Provide "72-Hour Odor Protection."

Despite having had an opportunity to amend her pleading, Plaintiff supplies no new allegations supporting her theory that the deodorant does not provide the claimed "72-hour odor protection." Plaintiff again fails to allege what "odor protection" means, much less how a reasonable consumer would understand that phrase. *Cf.* ECF No. 24 at 5. Nor does she proffer facts showing how, in her personal experience, the deodorant allegedly did not provide "odor protection." *See* Am. Compl. ¶ 29. All Plaintiff offers is a citation to an excerpt from Native's website stating that the deodorant "provides 72 hour odor protection" in response to a question about how *long* the deodorant "prevent[s] odor." *Id.* ¶ 20. This is not enough to state a claim.

Although she never says so explicitly, Plaintiff again appears to equate the phrase "odor protection" with *complete and total* odor elimination. *See id.* ¶ 21 (questioning whether one ingredient in the product "can prevent the accumulation of bacteria that causes body order"). The two do not mean the same thing—and Plaintiff does not (and cannot) allege a reasonable consumer would understand "odor protection" or prevention to mean *complete and total* elimination of any odor. *See* ECF No. 24 at 5. A deodorant can provide "odor protection" if it reduces odor, as the deodorant here does.

Plaintiff's ingredient-by-ingredient focus (Am. Compl. ¶ 21) does not affect this analysis. The relevant question is whether the deodorant *as a whole* can provide the advertised benefit, and Plaintiff does not allege facts showing that the deodorant as a whole is incapable of providing "odor protection," as reasonable consumers understand that term. *See In re GNC*

*Corp.*, 789 F.3d 505, 516 (4th Cir. 2015) (plaintiffs whose allegations relate only to two ingredients do not "adequately plead falsity of the representations regarding the products *as a whole*" (emphasis added)); *Wurtzburger v. Kentucky Fried Chicken*, 2017 WL 6416296, at *3 (S.D.N.Y. Dec. 13, 2017) (dismissing GBL claim where "Plaintiff fail[ed] to indicate how the phrase is deceptive or misleading other than to deem it so"); *Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 257–58 (E.D.N.Y. 2014) (dismissing GBL claim where the complaint did "not provide 'factual allegations explaining *how* any specific advertising claims were' false or misleading" (emphasis in original)).

## II.    Plaintiff's Claims Should Be Dismissed Because She Fails to Plausibly Plead a Cognizable Injury.

In addition to pleading an actionable misrepresentation, *see supra* § I, "a plaintiff must [plead] 'actual' injury to recover under the" GBL.  *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000).  As relevant here, Plaintiff must allege that in buying the deodorant she paid a price premium, which "may be alleged by showing … that because of a misrepresentation the plaintiff paid an inflated price."  *Belcastro v. Burberry Ltd.*, 2017 WL 5991782, at *4 (S.D.N.Y. Dec. 1, 2017) (citation omitted).

Plaintiff attempts to satisfy this requirement by baldly alleging that she paid an "exorbitant price premium" for the deodorant.  Am. Compl. ¶ 30.  This allegation falls short, however, as merely using the word "premium" does not suffice under *Twombly* and *Iqbal*.  *See DaCorta v. AM Retail Grp., Inc.*, 2018 WL 557909, at *9 (S.D.N.Y. Jan. 23, 2018) ("Plaintiff's apparent belief that simply alleging the word 'premium' will suffice, is simply incorrect."); *Izquierdo v. Mondelez Int'l, Inc.*, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016) ("Simply because Plaintiffs here recite the word 'premium' multiple times in their Complaint does not make Plaintiffs' injury any more cognizable.").  Instead, Plaintiff must plead *facts* supporting her

contention that she paid a price premium, and she has not done so.  *Iqbal*, 556 U.S. at 678
(complaint that "tenders naked assertion[s] devoid of further factual enhancement" is not
sufficient).

Plaintiff's only attempt to do so is her allegation that while the deodorant "costs
$3.99/oz., [Plaintiff] could have, for example, purchased Dove Whole Body deodorant for
$2.27/oz," Am. Compl. ¶ 31, or "Degree Whole Body deodorant for $2.24/oz."  *Id.* ¶ 32.  But
this is "comparing apples with oranges."  *Izquierdo*, 2016 WL 6459832, at *7.  While the Dove
spray is "not for intimate use," Zenlen's deodorant spray is, and the Dove and Zenlen products
have different ingredients.  *Compare* Amazon, https://shorturl.at/wx0pE (Dove) (last visited Jan.
31, 2025), *with* Native, https://www.nativecos.com/products/deodorant-whole-body-spray-aloe-
green-tea (Zenlen's deodorant) (last visited Jan. 31, 2025).  The two Degree sprays Plaintiff
points to (Am. Compl. ¶ 32) *also* have different ingredients than the Zenlen spray.  *See* Amazon,
https://www.amazon.com/Degree-Whole-Deodorant-Aluminum-
Protection/dp/B0DB69GMK5?ref_=ast_sto_dp (last visited Jan. 31, 2025); Amazon,
https://www.amazon.com/Degree-Deodorant-Waterlily-Aluminum-
Protection/dp/B0DB6B4267?ref_=ast_sto_dp (last visited Jan. 31, 2025).  There are other
differences as well, including that Native favors simpler formulas and ingredient lists, and uses
natural propellants rather than hydrofluorocarbons that can be harmful to the environment.

The inapt comparisons chosen by Plaintiff "tell[] the Court nothing about the value of the
[deodorant], or whether the cost of the [deodorant] was inflated by [Zenlen]'s allegedly
misleading" statement.  *Izquierdo*, 2016 WL 6459832, at *7; *see also Housey v. Procter &
Gamble Co.*, 2022 WL 874731, at *8 (S.D.N.Y. Mar. 24, 2022) ("Plaintiff cannot compare the
toothpaste at issue to a completely different product in order to manufacture a price premium."),

*aff'd*, 2022 WL 17844403 (2d Cir. Dec. 22, 2022). Plaintiff's failure to "justify why her comparison to [other products] is correct" for purposes of alleging a price premium means her GBL claims should be dismissed. *See Housey*, 2022 WL 874731, at *8 (dismissing GBL claims for this reason).

The need to allege facts supporting Plaintiff's price premium theory takes on special force in this case because the challenged statement does not appear on the product package itself, only in selected advertisements. As a result, not every purchaser of the deodorant was exposed to the statement. Given these challenges, Plaintiff does not meet her burden of pleading facts to show the statement caused her or anyone else to pay a price premium. *See Smith v. Apple, Inc.*, 583 F. Supp. 3d 554, 566 (S.D.N.Y. 2022) (Cote, J.) (pleading a price premium theory requires allegations of "a '*connection between the misrepresentation and any harm* from, or failure of, the product.'" (emphasis added)). Plaintiff thus fails to adequately "allege that the cost of [the deodorant] was affected by the alleged misrepresentation[.]" *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999) (dismissing GBL complaint that failed to adequately allege payment of a price premium). Her Amended Complaint offers nothing more than "labels and conclusions or a formulaic recitation of the elements of a cause of action"—this "will not do." *Iqbal*, 556 U.S. at 678. The Court should dismiss.

## CONCLUSION

This Court should dismiss the Amended Complaint with prejudice.

New York, New York
Dated: January 31, 2025

Respectfully submitted,

COVINGTON & BURLING LLP

*/s/ Andrew Soukup*
Andrew Soukup (*pro hac vice*)
Andrew Stanner (*pro hac vice*)
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
asoukup@cov.com
astanner@cov.com

Andrew Leff
Celin Carlo-Gonzalez
The New York Times Building
620 8th Avenue
New York, NY 10018
aleff@cov.com
ccarlogonzalez@cov.com

*Attorneys for Defendant Zenlen Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this Memorandum of Law complies with the length restrictions in Local Civil Rule 7.1(c) because it contains 4,622 words, as counted by the Microsoft Word-processing program used to prepare this document.  This word count excludes the caption, table of contents, table of authorities, signature blocks, and this certificate as provided for by Local Civil Rule 7.1(c).

*/s/ Andrew Soukup*
Andrew Soukup